FOURTH DIVISION
May 20, 2010

Nos. 1-09-0039 & 1-09-1293 (consolidated)

| | | |
|---|---|---|
| THE CARLTON AT THE LAKE, INC., an Illinois Corporation, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) | No. 07 L 8747 |
| ROBERT BARBER and JEAN BARBER, Individuals, | ) | Honorable Lee Preston, |
| Defendants-Appellees | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiff-appellant, The Carlton at the Lake, Inc. (Carlton), an Illinois corporation and a long-term care facility, brought the instant suit against defendants-appellees, Robert and Jean Barber. Carlton sought to recover for services it provided to Robert while he was a resident at its facility, ultimately filing a second amended complaint containing three counts: a breach of contract claim against Robert, a claim against Jean pursuant to the Illinois Rights of Married Persons Act (750 ILCS 65/15 (West 2008)), and a *quantum meruit* claim against both Robert and Jean.

The defendants filed a motion to dismiss, the circuit court dismissed the first two counts with prejudice, and Carlton appealed that decision (No. 1-09-0039). Thereafter, the circuit court

granted the defendants' motion to reconsider and dismissed the last remaining count as well. Carlton appealed from that decision (No. 1-09-1293), and these two appeals have now been consolidated. For the reasons that follow, we affirm in part and reverse in part.

## I. BACKGROUND

Carlton filed its initial complaint in August of 2007 and a first amended complaint in April of 2008. Both of these complaints were dismissed, without prejudice, pursuant to motions filed by the defendants. Carlton filed the operative second amended verified complaint on August 18, 2008.

In that complaint, Carlton generally alleged that it operated a licensed nursing home in the city of Chicago. Defendant Robert Barber was a resident of that facility from October of 2005 until December of 2007. Carlton alleged that the remaining balance for Robert's care and treatment was over $134,000 at the time he was discharged. Carlton's second amended verified complaint sought the recovery of this balance in three separate counts.

Count I sought damages for breach of contract and alleged that Robert's daughter, Jane, had at all relevant times acted as his attorney-in-fact. At the time of Robert's admission to Carlton, Jane was given a copy of a contract outlining the costs of the services Robert would be provided. Although the complaint acknowledges that neither Robert nor Jane signed this contract, count I nevertheless asserts that Jane accepted this contract on Robert's behalf by admitting him to the facility, accepting Carlton's services, and by signing several other related admission forms. Count II reiterated these assertions and stated a claim against Robert's wife Jean pursuant to the Illinois Rights of Married Persons Act. 750 ILCS 65/15 (West 2008).

2

Count III was pled in the alternative, contained similar allegations, and sought recovery under the equitable principles of *quantum meruit.*

The defendants filed another motion to dismiss Carlton's second amended complaint and on December 18, 2008, the circuit court granted that motion in part by dismissing counts I and II with prejudice. The trial court also made a written finding that there was no reason to delay enforcement or appeal of that order, and Carlton immediately appealed that decision (No. 1-09-0039). The defendants filed a successful motion to reconsider, and on May 7, 2008, the trial dismissed count III with prejudice as well. Carlton has also appealed from that decision (No. 1-09-1293), and these two appeals have now been consolidated. We also note that Robert is now deceased, his death having been suggested of record in the circuit court in February of 2009.

II. ANALYSIS

In this consolidated appeal, Carlton challenges the circuit court's dismissal of each of its three counts against the defendants. We affirm in part and reverse in part.

A. Standard of Review

The defendants moved to dismiss Carlton's complaint pursuant to sections 2-615 and 2-619(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(9) (West 2008)).

"When ruling on a motion to dismiss, either for failure to state a cause of action [section 2-615] or because the claims are barred by other affirmative matter that avoids the legal effect of or defeats the claim [section 2-619(9)], the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997). The court should grant the motion only if the plaintiff can prove no

set of facts that would support a cause of action, and our review is *de novo*. *In re Chicago Flood*, 176 Ill. 2d at 189.

## B. Count I - Breach of Contract

We first consider Carlton's breach of contract claim against Robert and find that it was properly dismissed.

To establish a breach of contract, a plaintiff must show the existence of a valid and enforceable contract, performance of the contract by the plaintiff, breach of the contract by the defendant, and resulting injury to the plaintiff. *Sherman v. Ryan*, 392 Ill. App. 3d 712, 732 (2009). Included in the formation of a valid contract are offer and acceptance, consideration, and definite and certain terms. *Zirp-Burnham, LLC v. E. Terrell Associates, Inc.*, 356 Ill. App. 3d 590, 600 (2005). Generally, one of the acts forming the execution of a written contract is its signing. *Hedlund & Hanley, LLC v. Board of Trustees of Community College District No. 508*, 376 Ill. App. 3d 200, 206 (2007). Nevertheless, "a party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it." *Landmark Properties, Inc. v. Architects International-Chicago*, 172 Ill. App. 3d 379, 383 (1988).

In the trial court, and again on appeal, Carlton has relied upon these general propositions to support its argument. Carlton contends that its tender of a written contract to Robert's daughter and attorney-in-fact Jane, along with Jane's acceptance of this contract by admitting Robert to Carlton's facility and signing various other admissions forms, created a valid binding contract despite the fact that the contract was never signed. The trial court disagreed with this

Nos. 1-09-0039 & 1-09-1293 (consolidated)

argument, however, finding that it failed to account for the provisions of the Nursing Home Care Act (Act) (210 ILCS 45/1-101 *et seq*. (West 2008)).

The Act is a comprehensive statute establishing standards for the treatment and care of nursing home residents and expanding the power of the Illinois Department of Public Health to enforce the provisions of the Act. *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 358 (1986). Principal components of the Act were a residents' "bill of rights," under which nursing home residents were guaranteed certain rights, as well as the establishment of certain responsibilities of nursing home facilities. *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 97 (2003); *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 461 (1999). Among those responsibilities was the requirement that a written contract be "executed" between the facility and each resident, very specifically identifying the services and care that the facility will provide. *Fisher*, 188 Ill. 2d at 461; 210 ILCS 45/2-202(a) (West 2008). Additionally, the Act requires that "[a]t the time of the resident's admission to the facility, a copy of the contract shall be given to the resident, his guardian, if any, and any other person who executed the contract." 210 ILCS 45/2-202(c) (West 2008).

Furthermore, to ensure that nursing homes comply with the Act, "the legislature invested the Department of Public Health with expanded regulatory and enforcement powers, and created civil as well as criminal penalties." *Eads*, 204 Ill. 2d at 97-98; 210 ILCS 45/3-801 (West 2008). Pursuant to that authority, the Department of Public Health has adopted administrative rules implementing the Act provisions regarding contracts between nursing home facilities and residents. 77 Adm. Code § 300.630, amended at 18 Ill. Reg. 15868, 15879, eff. October 15,

5

Nos. 1-09-0039 & 1-09-1293 (consolidated)

1994. Those provisions provide, in relevant part:

"f)        The contract *shall be signed* by the licensee or his

agent. The title of each person signing the contract for the

facility shall be clearly indicated next to each such

signature. The nursing home administrator may sign as the

agent of the licensee.

g)        The contract *shall be signed* by, or for, the resident,

as described in subsection (a) of this Section. If any person

other than the principal signatory is to be held individually

responsible for payments due under the contract, that

person shall also sign the contract on a separate signature

line labeled "signature of responsible party" or "signature of

guarantor." (Emphasis added.) 77 Adm. Code §§

300.630(f), (g), amended at 18 Ill. Reg. 15879, eff. October

15, 1994.

As a general rule, courts will not enforce a private agreement which is contrary to public

policy. *Holstein v. Grossman*, 246 Ill. App. 3d 719, 725 (1993). Public policy is the legal

principle that no one may lawfully do that which has the tendency to injure the welfare of the

public, and the public policy of the state is reflected in its constitution, statutes and judicial

decisions. *Holstein*, 246 Ill. App. 3d at 725-26. As noted above, the Act was a comprehensive

piece of legislation designed to provide residents with specific rights and to impose specific

6

responsibilities on nursing homes. Among those rights and responsibilities was the requirement that the contract between a nursing home and a resident contain specific items, be in writing, and be signed by both parties.

Here, Carlton's complaint itself acknowledges that the contract was not signed by Robert or Jane. As such, the trial court dismissed count I because it failed to allege the "execution" of a contract in compliance with the requirements of the Act. Our review of the contract attached to Carlton's complaint reveals that it was not signed by a representative of Carlton either. We must agree with the circuit court that the unsigned contract was unenforceable under the Act, and we therefore affirm the dismissal of count I.

### C. Count II - Illinois Rights of Married Persons Act

We next address the dismissal of Carlton's count against Jean, brought pursuant to the Illinois Rights of Married Persons Act.

The relevant provision of the Illinois Rights of Married Persons Act provides that the "expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife, or of either of them, in favor of creditors therefor, and in relation thereto they may be sued jointly or separately." 750 ILCS 65/15(a)(1) (West 2008). "The law is well settled that medical expenses are 'family expenses' under section 15(a)(1) and that a husband and wife are each liable for the medical expenses of the other." *Boswell Memorial Hospital v. Bongiorno*, 314 Ill. App. 3d 620, 622 (2000). In the abstract, therefore, Carlton would have a clear right to pursue recovery from Jean for the "family expenses" incurred by Robert while he was a resident of Carlton's facility.

7

However, count II of Carlton's complaint against Jean is clearly dependent and reliant upon Robert's underlying liability to Carlton under the written contract. Indeed, count II merely "reincorporates and realleges" the allegations of breach of contract contained in count I and asserts that Jean is liable for those contract damages pursuant to the Illinois Rights of Married Persons Act. However, as discussed above, the unsigned contract was properly held unenforceable due to a failure to comply with the Act. As such, we find that the circuit court also properly dismissed count II.

### D. Count III - *Quantum Meruit*.

We next consider the dismissal of Carlton's final count, which asserted a claim against both Robert and Jean under the equitable principals of *quantum meruit*.

*Quantum meruit* means " 'as much as he deserves.' " *First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 365 (1997), quoting *Romanek-Golub & Co. v. Anvan Hotel Corp.*, 168 Ill. App. 3d 1031, 1041 (1988). This equitable theory is founded on the implied promise of a recipient of services to pay for such valuable services, as otherwise the recipient would be unjustly enriched. *Todd W. Musburger, Ltd. v. Meier*, 394 Ill. App. 3d 781, 794 (2009). "A party seeking recovery on a *quantum meruit* theory must demonstrate the performance of services by the party, the conferral of the benefit of those services on the party from whom recovery is sought, and the unjustness of the latter party's retention of the benefit in the absence of any compensation." *First National*, 179 Ill. 2d at 365. Nevertheless, courts have refused to allow recovery on a *quantum meruit* basis where an underlying contract violates public policy. *First National*, 179 Ill. 2d at 366.

8

Nos. 1-09-0039 & 1-09-1293 (consolidated)

It does not appear that any Illinois appellate court has addressed what impact, if any, a violation of the provisions of the Act has on the rights of a nursing home to recover in equity pursuant to *quantum meruit*. The defendants assert, and the circuit court ultimately agreed, that Carlton cannot recover on a *quantum meruit* theory where the underlying contract is unenforceable on the basis of public policy. Carlton contends that the circuit court's ruling failed to appreciate a distinction between the availability of *quantum meruit* recovery where the *subject matter* of an underlying contract makes it unenforceable, and a situation where only some issue with *formation or execution* makes the underlying contract unenforceable.

Specifically, Carlton notes that the two cases cited by the circuit court in support of its decision to dismiss count III represent only the former situation. See *First National*, 179 Ill. 2d at 365-66 (*quantum meruit* unavailable where subject matter of underlying contingent fee agreement held unenforceable as being against public policy); *Leoris v. Dicks*, 150 Ill. App. 3d 350, 354 (1986) (*quantum meruit* unavailable where subject matter of underlying fee-splitting contract was unenforceable as being against public policy). Carlton would instead have us follow the reasoning contained in *K. Miller Construction Co. v. McGinnis*, 394 Ill. App. 3d 248 (2009), *appeal allowed*, 234 Ill. 2d 523.

In *McGinnis*, a contractor filed suit against a homeowner to recover for work it performed in a remodeling project. The contractor sought to recover for breach of an oral contract or under a theory of *quantum meruit* but the circuit court dismissed the suit. *McGinnis*, 394 Ill. App. 3d at 251-52. On appeal, this court affirmed the dismissal of the contract claims as the contractor's attempt to enforce the oral contract ran afoul of the Home Repair and Remodeling Act (Home

9

Nos. 1-09-0039 & 1-09-1293 (consolidated)

Repair Act) ( 815 ILCS 513/30 (West 2008) ("It is unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract")). However, the court went on to find that the contractor's violation of the Home Repair Act did not preclude it from pursuing equitable recovery pursuant to *quantum meruit. McGinnis*, 394 Ill. App. 3d at 265. Specifically, the court found that allowing the contractor to recover under *quantum meruit* was not disallowed by and would not violate the public policy expressed in the Home Repair Act. *McGinnis*, 394 Ill. App. 3d at 262. This court therefore remanded the case for further proceedings on the *quantum meruit* claim. *McGinnis*, 394 Ill. App. 3d at 265.

We agree with this reasoning, and apply it to the Act. "Common law rights and remedies are in full force in this state unless repealed by the legislature or modified by the decision of our courts. [Citations.] A legislative intent to abrogate the common law must be clearly and plainly expressed, and such an intent will not be presumed from ambiguous or doubtful language." *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 518 (1997).

Here, we have already determined that the provisions of the Act clearly preclude Carlton from recovering for the alleged breach of a contract that was never signed. However, we find nothing in the Act that "clearly and plainly" expresses a legislative intent to limit Carlton's recovery under other common law theories, including equitable relief. Rather, this case represents a situation where only a issue of *execution* caused the contract to be unenforceable, and as such the possibility of equitable relief pursuant to *quantum meruit* remains available. *Weydert Homes, Inc. v. Kammes*, 395 Ill. App. 3d 512, 522 (2009), citing Black's Law Dictionary

10

1276 (8th ed. 2004) ("*Quantum meruit* is used as an equitable remedy to provide restitution for unjust enrichment and is often pleaded as an alternative claim in a breach-of-contract case so that the plaintiff may recover even if the contract is unenforceable").

Moreover, allowing Carlton to seek equitable relief pursuant to *quantum meruit* will not defeat the purposes of the Act. The General Assembly enacted the Act "amid concern over reports of 'inadequate, improper and degrading treatment of patients in nursing homes.' " *Harris*, 111 Ill. 2d at 357-58, quoting 81st Ill. Gen. Assem., Senate Proceedings, May 14, 1979, at 184 (statement of Senator Berning). In this case, there is no assertion that Robert's care at Carlton's facility was anything other than satisfactory.

Finally, there is no concern that Carlton's failure to comply with the Act's contract provisions will lead the defendants to be subjected to unnecessarily harsh contract terms. Under *quantum meruit*, "where the party seeks not the benefit of his bargain but sues only to disgorge an unjust enrichment, the proper inquiry is the *reasonable value* of the benefit received." (Emphasis added.). *Rohter v. Passarella*, 246 Ill. App. 3d 860, 867 (1993). Upon remand, Carlton will have the burden of demonstrating both the services it provided and the reasonable amount it seeks to recover for those services. In turn, the defendants will be free to challenge Carlton's assertions.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court dismissing counts I and II is affirmed. However, we reverse the dismissal of count III and remand for further proceedings consistent with this opinion. Additionally, while we have noted that Robert is now deceased, it

Nos. 1-09-0039 & 1-09-1293 (consolidated)

does not appear that a representative has been substituted as a party.  Upon remand, the parties

and the circuit court are free to proceed pursuant to section 2-1008 of the Code (735 ILCS 5/2-

1008 (West 2008)), and we express no opinion on those proceedings.

No. 1-09-0039 – Affirmed.

No. 1-09-1293 – Reversed and remanded.

O'BRIEN and GALLAGHER, JJ., concur.