2025 IL App (1st) 231162-U

Fourth Division
Filed March 20, 2025

No. 1-23-1162

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| MORRELL S. NEELY and NOIL PETROLEUM CORPORATION, | ) ) ) |
| Plaintiffs-Appellants and Cross-Appellees, | ) Appeal from the ) Circuit Court of ) Cook County |
| v. | ) ) |
| WILLIAM SENNE, PROPERTY CONSULTANTS REALTY, INC., and CHICAGO TITLE LAND TRUST CO., as Trustee Under Trust Agreement No. 80023425271 dated October 27, 2005, | ) ) No. 19 CH 07273 ) ) The Honorable |
| Defendants | ) Mary Colleen Roberts, ) Judge, presiding. |
| (William Senne, Defendant-Appellee and Cross-Appellant, and Property Consultants Realty, Inc., Defendant-Appellee). | ) ) ) |

JUSTICE OCASIO delivered the judgment of the court.
Justices Hoffman and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's judgment in favor of defendants was affirmed where (1) its finding that plaintiffs had not proven fraud was not against the manifest weight of the evidence and (2) plaintiff corporation's ordinance claim was barred by a previous settlement agreement.

¶ 2    Plaintiffs, Morrell S. Neely and Noil Petroleum Corporation (Noil Petroleum), sued defendants, William Senne and Property Consultants Realty, Inc., for common-law fraud and, as to Senne, for the violation of section 5-12-080 of the Chicago Residential Landlords and Tenants Ordinance (RLTO) (Chicago Municipal Code § 5-12-080 (amended July 28, 2010)) by not

repaying interest on prepaid rent within 30 days of the end of a residential lease. After a bench trial, the court found that plaintiffs had not proven fraud and that, although Senne had violated the RLTO, plaintiffs were not entitled to statutory damages, and it entered judgment in favor of defendants on both counts. On appeal, plaintiffs challenge the trial court's determinations. On cross-appeal, defendant Senne argues that the trial court erred by finding that he violated the RLTO and that, in any event, he was entitled to judgment because plaintiffs released the RLTO claim as part of an earlier settlement agreement. We affirm.

¶ 3                                              BACKGROUND

¶ 4        The dispute at hand arises from the parties' efforts to negotiate the sale of a 10,000 square-foot home located at 1764 North Hoyne Avenue in Chicago (the Hoyne Residence), which was held by a trust for the benefit of Senne (the Hoyne Trust).[1] The evidence elicited at trial showed that, between 2015 and 2018, Neely and Senne executed, but failed to close on, multiple sales contracts. During this same period, the parties entered into a series of agreements under which Neely or Noil Petroleum—a corporation owned by Neely, who was also its sole director and officer—leased the Hoyne Residence from Senne, allowing Neely and his family to live there pending a future sale. In anticipation of perfecting a sale, these agreements called for some of the amounts paid by plaintiffs to be applied to a future purchase. This arrangement broke down in 2018, leading Senne to initiate eviction proceedings and plaintiffs to bring a separate chancery action (the 2018 chancery action). In late 2018, plaintiffs dismissed their chancery action with prejudice, apparently pursuant to a settlement agreement, and Neely was permitted to remain at the residence through February 2019 as long as he paid rent. The parties were unable to reach an agreement to extend the lease beyond that. Senne obtained an eviction order, and the sheriff forcibly evicted Neely and his family in late June.

---

[1]    The trustee, Chicago Title Land Trust Company, was named as a defendant, but plaintiffs' claims against it were dismissed before trial, and it is not a party to this appeal.

¶ 5        On June 17, 2019, nine days before the Neelys were removed from the Hoyne Residence, plaintiffs initiated the underlying action. Count I of the operative complaint alleged that defendants had fraudulently induced plaintiffs to enter the various lease and sales agreements, under which they paid defendants more than $500,000, by failing to disclose that the Hoyne Residence was subject to a mortgage that had been in default since 2009. Count V alleged that Senne had violated the RLTO by failing to timely pay plaintiffs the interest that had accrued on prepaid rent after the expiration of a year-long lease agreement in October 2017.[2] See Chicago Municipal Code § 5-12-080(c). Before trial, Senne moved to dismiss four counts as barred by the 2018 settlement agreement, including the RLTO claim, which plaintiffs had also raised in the 2018 chancery litigation. The trial court denied the motion.

¶ 6        The matter proceeded to a bench trial, where the evidence generally showed the facts described above. Our disposition of this case does not require a detailed recitation of the evidence, and the specific facts pertinent to each issue are discussed in our analysis below.

¶ 7        Following three days of evidence, on January 20, 2023, the trial court entered a memorandum order containing its findings. As to the fraud claim, the court acknowledged that defendants, as licensed real-estate brokers, may have had a duty to disclose the existence of the defaulted mortgage. Nevertheless, the court found that plaintiffs failed to prove that defendants had intended their nondisclosure to induce Neely to act, that Neely relied on their failure to disclose, or that Neely was damaged by that reliance. As to the RLTO claim, the court found that Senne had failed to pay plaintiffs the interest that had accrued on the prepaid rent within 30 days of the expiration of the lease. However, the trial court also determined that the penalty for the violation was, per the RLTO, statutory damages of twice the security deposit. See Chicago Municipal Code § 5-12-080(f)(1). As the prepaid rent was not a security deposit, the court reasoned, plaintiffs were

_____

[2]  Counts II, III, and IV were dismissed before trial, and neither party raises any issues with respect to those counts.

not entitled to statutory damages. Accordingly, the court entered judgment for defendants on the fraud claim and judgment for Senne on the RLTO claim.

¶ 8                                                            ANALYSIS

¶ 9        On appeal, plaintiffs raise two claims of error. First, they argue that they proved their fraud claim at trial and that the court's contrary finding was against the manifest weight of the evidence. Second, they argue that the court erred by determining that Noil Petroleum was not entitled to nominal damages, statutory damages, or attorney fees despite the court's factual finding that Senne violated the RLTO by not timely paying back the interest accrued on prepaid rent. Defendants argue that neither determination was error. On cross-appeal, Senne further contends that the trial court's finding that he violated the RLTO was factually erroneous and that, in any event, the claim was barred by either the 2018 settlement agreement or by plaintiffs' contemporaneous voluntary dismissal of that claim with prejudice.

¶ 10                                              Plaintiffs' Fraud Claim

¶ 11        We begin with plaintiffs' argument that the trial court erred by finding that they had not proven that defendants were liable to them for fraud. We defer to the trial court's factual findings on appeal, "and we will not disturb them unless they are against the manifest weight of the evidence." *Andrew W. Levenfeld & Associates, Ltd., v. O'Brien*, 2024 IL 129599, ¶ 56. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the finding is otherwise unreasonable, arbitrary, or not based on the evidence. *Id.* In making that determination, we do not reweigh the evidence ourselves. *Chicago Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 31. If reasonable people might draw different conclusions, then trier of fact's determination stands. *Id.*

¶ 12        Plaintiffs' fraud claim was premised on the theory that defendants fraudulently concealed that the Hoyne Residence was subject to a mortgage that was in default. A claim for fraudulent concealment has five elements:

"(1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages." *Bauer v. Giannis*, 359 Ill. App. 3d 897, 902-03 (2005).

Our analysis begins and ends with the fifth element.

¶ 13       The evidence at trial showed that, during the 2000s, Senne, either personally or through the Hoyne Trust, took out two mortgages on the Hoyne Residence.[3] The first was a $2 million loan that was used to finance the home's construction. Senne testified at trial that the outstanding balance remained at about $2 million during the period relevant to this case. The second was a $700,000 loan taken out in 2007 for reasons that are somewhat opaque, but when it reached maturity two years later, Senne—who had personally guaranteed the note—defaulted on repayment, and it would remain in default until Senne settled with the lender in 2020.

¶ 14       In February 2015, Neely agreed to buy the Hoyne Residence from Senne for $3.75 million. Under their written contract, Neely paid $144,000 in earnest money "in the form of rebated rent." It was undisputed that defendants did not affirmatively disclose to Neely that the second mortgage was in default. The sale never reached closing, and Senne retained the earnest money. Later, in October 2016, Noil Petroleum and Senne entered into a one-year residential lease for the Hoyne

---

[3]   For the sake of clarity and consistency with the briefs and record, we have adopted the parties' description of these secured loans as mortgages, but we note that it is not clear from the record that either one was, in fact, a mortgage.

Residence, with Neely and his family named as the intended beneficiaries. The lease called for the entire year's rent—$288,000—to be prepaid, and it provided that half of that amount would be applied as a credit in a future purpose. It also gave Noil Petroleum, as lessee, the right to match any offers to buy the property. While that lease was in effect, in May 2017, Neely again agreed to buy the home from Senne, this time for $4.1 million. That sale also never closed. After the one-year lease expired, Neely continued living in the home under what appear to have been a series of *ad hoc* agreements. In April 2018, the parties entered into a third contract for Neely to buy the home, again for $4.1 million. Like the two before it, that attempted sale never closed.

¶ 15    In May 2018, the successor bank to the original lender on the second mortgage filed a complaint against Senne and the Hoyne Trust claiming that it was owed more than $1.2 million on the second mortgage. A sheriff's deputy attempting service brought the complaint to the Hoyne Residence and told Neely that it was a foreclosure notice. Neely testified at trial that, until that point, he had not known that Senne and the Hoyne Trust were in default on the second mortgage. Senne continued looking for a buyer, and he eventually sold the Hoyne Residence in 2022 for $3.05 million.

¶ 16    Neely testified at trial that, at the time he (or, technically, Noil Petroleum) entered into the one-year lease, both his own realtor and Senne told him that the rental value of the Hoyne Residence was $12,000 per month, but he agreed to pay double that with the understanding that the extra $12,000 per month would be credited against whatever price he paid to buy the home at a later point. Since the parties never consummated a sale, that credit never materialized. Neely also testified that, had he known that there was a mortgage on the Hoyne Residence that was in default, he would not have agreed to pay double rent. Thus, plaintiffs reason, the failure to disclose the defaulted mortgage caused his loss of the extra $144,000 that they paid beyond the rental value of the home.

¶ 17    The flaw in this argument is that the immediate cause of Neely's loss was the parties' failure to close on any of the sales contracts, and the evidence did not compel a conclusion that the sales fell through because of the second mortgage being in default. There was conflicting testimony

about why the sales did not close. In general, Neely testified that Senne backed out of the sales because he had a pending divorce, while Senne blamed Neely's failure to secure a mortgage. Neely testified at one point that he "was told that they couldn't close the financing [for the 2017 sale] because there was a lien on the property," but that was inconsistent with his testimony that he did not learn about the second mortgage until the sheriff came to his door in May 2018. It was reasonable for the trial court to give more weight to the latter testimony. See *Chicago Land Trust*, 2012 IL App (1st) 063420, ¶ 31 (explaining that that trier of fact is in a better position to evaluate contradictory evidence). Furthermore, there was evidence that *neither* mortgage would have prevented the parties from closing the sale. Senne's real-estate attorney testified that the proceeds from the 2017 sale would have extinguished the debts owed on both mortgages, and Senne testified without contradiction that he had other assets that he would have been able to use to cover any shortfall at closing. Based on the evidence before it, the trial court reasonably concluded that plaintiffs "failed to establish damages resulting from reliance on the undisclosed information." The finding in favor of Senne on this claim was, accordingly, not against the manifest weight of the evidence.

¶ 18                                    Plaintiffs' RLTO Claim

¶ 19        Plaintiffs next argue that the trial court erred by finding that Senne violated the RLTO by not timely repaying interest on prepaid rent but then determining, as a matter of law, that they were not entitled to statutory damages, nominal damages, or attorney fees. We find it unnecessary to consider that argument because we agree with Senne that the RLTO claim was barred by the 2018 settlement agreement. See *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007) ("[A] reviewing court can uphold the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was correct.").

¶ 20        Materials in the record show that, on September 5, 2018, plaintiffs filed a complaint in the chancery division under case number 2018 CH 11230. The three-count complaint named Neely

and Noil Petroleum as the plaintiffs and Senne as the defendant. In count I, Neely sought declaratory relief confirming that, under various contracts between the parties, he retained the right to earnest money he had paid Senne and the right to match an offer to buy the Hoyne Residence. In count II, Neely sought recission of one of those contracts and the return of the earnest money. Relevant here is count III, which alleged that Senne violated the RLTO's interest-repayment provision—the same claim at issue in this appeal—and named both Neely and Noil Petroleum as the parties seeking relief.

¶ 21    Later, on November 16, 2018, Neely and Senne signed a settlement agreement, which is also in the record. The agreement was captioned with the name and case number for a separate eviction action that Senne had brought against Neely. Noil was not a party to that case. As relevant here, the agreement provided as follows:

> "1. Morrell S. Neely shall pay to William Senne the sum of $75,000.00 representing settlement of the issues for rent, possession, and Morrell S. Neely's claim in the Chancery Case No. 18 CH 11230.
> ***
>
> * * *
>
> 6. Upon the execution of this Agreement by the parties, Morrell S. Neely shall have the Chancery Case No. 18 CH 11230 dismissed with prejudice and shall have no further claims against William Senne except for any claim arising for breach of this Agreement, for which the dismissal in case no. 18 CH 11230 shall not operate as a bar if timely raised in case no. 18 M1 710841 [the eviction case] as to the $10,000.00 escrow deposit."

Consistent with this agreement, four days later (November 20, 2018), the court entered an order in 2018 CH 11230 stating: "Plaintiffs [*sic*] Complaint against Defendant is voluntarily dismissed with prejudice and without costs assessed." The caption on the order names "Noil Petroleum Corp. &

Morrell S. Neely" as the plaintiffs, and the order indicates that it was prepared by counsel for plaintiffs.

¶ 22    After plaintiffs filed their amended complaint in this matter, Senne moved to dismiss the RLTO claim as barred by *res judicata*. The court denied the motion "for the reasons stated on the record in open court."[4] In his subsequent answer, Senne raised the settlement agreement as an affirmative defense. Then, at trial, Neely testified that he understood "Morrell S. Neely" in paragraphs 1 and 6 of the settlement agreement to also refer to Noil Petroleum. Additionally, Neely admitted on cross-examination that he often conflated himself and his corporation in communications concerning what was formally Noil Petroleum's lease of the Hoyne Residence.

¶ 23    On cross-appeal, Senne argues that the trial court's judgment in his favor on the RLTO claim should be affirmed because plaintiffs released that claim in the 2018 settlement agreement.[5] Plaintiffs contend that, while Neely was a party to the settlement agreement, Noil Petroleum was not, which means that Noil Petroleum had not released its claim. Senne acknowledges that the settlement agreement does not specifically name Noil Petroleum, but he maintains that, due to Neely's habit of referring to Noil Petroleum's corporate acts as his own personal acts, the settlement agreement is ambiguous.

¶ 24    When construing a contract, the "objective is to determine and give effect to the intent of the parties at the time they entered into the contract." *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067, ¶ 30. We agree with plaintiffs that we "must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). We begin with the obvious: Noil Petroleum is not listed as a party to the settlement agreement. That does not make the contract

---

[4]    The record does not include a report of proceedings for that hearing, although the court indicated at trial that there was an unresolved "question of fact" about the 2018 settlement agreement.

[5]    Senne also argues that Noil's dismissal of the RLTO claim with prejudice in November 2018 made that claim *res judicata*, but he does not cite any legal authority for that argument, thereby forfeiting it. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 36.

unambiguous, however. Paragraph 6 of the agreement provided: "Morrell S. Neely shall have the Chancery Case No. 18 CH 11230 dismissed with prejudice." This provision expressly required Neely to dismiss his personal claims, but it was silent as to whether it also required Neely to dismiss his corporation's claims. That silence can be read two ways. It could be interpreted to mean that Noil Petroleum's claims were not affected by the settlement agreement. At the same time, as Senne notes, the 2018 chancery action involved both Neely and Noil Petroleum as plaintiffs. If the parties meant to exclude Noil Petroleum, one would have expected them to make that explicit, especially since the agreement specified that it was the *case* that would be dismissed, not merely some of the *claims*. Hence, the silence as to Noil Petroleum can also be interpreted as including its claims in the agreement. Both readings are reasonable ones, which makes the provision ambiguous. See *Clanton*, 2023 IL 129067, ¶ 33 (explaining that contractual language is ambiguous when it is susceptible to multiple meanings or when its meaning is obscure). And that ambiguity means that the parties' intent can be properly shown through extrinsic evidence. *Owen v. Village of Maywood*, 2023 IL App (1st) 220350, ¶ 21.

¶ 25       Here, the extrinsic evidence introduced at trial plainly showed that the parties' intent was that the settlement agreement would apply to both Neely's personal claims and Noil Petroleum's corporate claims. In fact, Neely admitted at trial that he understood that the settlement agreement applied to Noil Petroleum's claims. As Noil Petroleum's sole officer and director, Neely was obviously capable of entering into contracts on behalf of the corporation. See *La Salle National Bank v. 53rd-Ellis Currency Exchange, Inc.*, 249 Ill. App. 3d 415, 432 (1993). Also, it is undisputed that, mere days after the parties signed the settlement agreement, plaintiffs—both Neely and Noil Petroleum—voluntarily dismissed the 2018 chancery action with prejudice. That act is highly probative circumstantial evidence showing that the intent of the parties was that both Neely and Noil Petroleum would release their claims. See *Szafranski v. Dunston*, 2015 IL App (1st) 122975-B, ¶ 102 (stating that the parties' conduct postdating a contract can be used to discern their intent). Although the trial court ultimately did not enter any findings on Senne's release defense to the RLTO claim, this evidence permitted only one conclusion, which was that the 2018 settlement

agreement called for both Neely and Noil Petroleum's claims to be dismissed and, thus, released. From that, it follows that Senne was entitled to a finding in his favor on his affirmative defense of release and, thus, judgment for him on the RLTO claim. The trial court properly entered judgment in favor of Senne on that claim.

¶ 26                                              CONCLUSION

¶ 27       Because the trial court's findings as to plaintiffs' fraud claim were not against the manifest weight of the evidence and because the parties' settlement agreement released both Neely's and Noil Petroleum's claims in the 2018 chancery action, including the RLTO claim raised again in the underlying complaint, the trial court properly entered judgment for defendants on both of those claims.

¶ 28       Affirmed.